IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HARRY T. CREQUE, | ) | CASE NO. 4:10-CV-1528 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE PATRICIA A. GAUGHAN |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | MAGISTRATE JUDGE McHARGH |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule.  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Harry Creque's ("Plaintiff" or "Creque") application for Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I.  INTRODUCTION & PROCEDURAL HISTORY

On April 23, 2007, Plaintiff protectively filed applications for Disability Insurance benefits and Supplemental Security Income benefits, alleging a disability onset date of January 28, 2005.[1] (Tr. 123-33).  Plaintiff's applications were denied initially and upon reconsideration.  (Tr. 48-51,

---

[1]Plaintiff previously applied for benefits on June 26, 2002.  *See* (Tr. 38).  This application was denied initially, upon reconsideration, and by an administrative law judge.  (Tr. 38-43). However, Plaintiff did not seek to reopen this determination before the ALJ during the hearing, nor in its briefs before the Court.

66-71, 78-83).  Plaintiff timely requested and was granted an administrative hearing.  (Tr. 86-88).  On July 13, 2009, Plaintiff appeared with counsel and testified at a hearing held before Administrative Law Judge John J. Porter (the "ALJ" or "ALJ Porter").  (Tr. 8-34).  Testifying at the hearing were Plaintiff and Dr. Fred Monaco, an impartial vocational expert (the "VE").  *Id.*  At the conclusion of the hearing, ALJ Porter agreed to leave the record open for a short period of time in order to allow Plaintiff's counsel to submit additional documents for inclusion in the record.  (Tr. 10-11).

The ALJ issued a written decision on September 24, 2009, in which he applied the five-step sequential evaluation analysis,[2] and determined that Plaintiff retained the residual functional

---

[2]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The Sixth Circuit has summarized the five steps as follows:

(1)  If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2)  If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)  If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)  If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)  Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

2

capacity ("RFC") to perform a limited range of sedentary work existing in significant numbers in the national economy and, therefore, was not disabled.  (Tr. 55-65).  Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council.  (Tr. 5-7).  On May 7, 2010, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's determination the final decision of the Commissioner.  (Tr. 1-3).  Plaintiff now seeks judicial review under 42 U.S.C. § 405(g) and 1383(c)(3).  Plaintiff, born on June 24, 1966, was forty-three years old at the time of the hearing and considered a younger person for Social Security purposes.  (Tr. 12-13); 20 C.F.R. § 404.1563(c).  He completed the tenth grade of high school and has past experience working as a floor maintenance person.  (Tr. 13, 27).

## II. VOCATIONAL EXPERT TESTIMONY

ALJ Porter posed a series of hypothetical questions to the VE.  Initially, the ALJ asked the VE to identify whether there would be jobs to accommodate a person of Plaintiff's age, education, training, work experience and RFC.  (Tr. 28).  In response, the VE answered that such an individual would be able to work as a surveillance system monitor (115,000 positions), document preparer (124,000 positions) or a bench assembler (80,000 positions).  (Tr. 28-29).  Next, the ALJ asked the VE to consider whether the hypothetical individual would still be able to perform the jobs identified if the person needed to elevate his feet to heart-level during portions of the time in which the person was sitting.  (Tr. 29).  In response, the VE noted that this limitation would eliminate the document preparer and bench assembler positions, but would not affect the surveillance system monitor position, explaining that "it [was] not uncommon in jobs whereby individuals are not dealing with the public."  *Id.*  ALJ Porter then asked the VE to disregard the individual's need to elevate his feet, and consider whether any jobs would be eliminated if the individual was off task four times a day

3

for fifteen minute periods and experienced dizzy or unconscious spells.  *Id.*  As a result, the VE stated that under these circumstances, substantial gainful activity would be impossible.  (Tr. 29-30).

During Plaintiff's counsel's cross examination of the vocational expert, counsel asked whether an inability to use one's right hand would eliminate any of the jobs identified.  (Tr. 30).  The VE explained that such a limitation would not preclude the surveillance system monitor position at all, but that only 75 percent of the document preparer positions would be available, and it would totally eliminate the bench assembler position.  *Id.*  Additionally, the VE noted that the surveillance system monitor position would not be eliminated even if the person could only use his right hand infrequently and needed to elevate his feet.  (Tr. 31).  The VE further explained that this position was usually completed in an isolated room and generally entailed monitoring sound, television, or other devices.  *Id.*  When Plaintiff's counsel inquired whether the need to elevate one's feet was considered an accommodation, the VE denied such explaining that although this limitation would not be listed in the job's description, it would not pose a problem because of the nature of the job in that it was normally performed in isolation.  *Id.*

Finally, before the close of the hearing, ALJ Porter again asked the VE to consider an additional limitation to his first hypothetical, by including a restriction that the individual only "be approached from his/her left side to communicate . . . because of a right [ear] hearing problem".  (Tr. 33).  To wit, the VE answered that "there [we]re times that would be an accommodation, that people would learn in a workplace, [and] if that were the only situation, that would not eliminate any jobs." *Id.*

### III.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20. C.F.R. §§ 404.1505, 416.905.

### IV.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387.

However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See* *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. ANALYSIS

After completing a review of the record, ALJ John Porter determined that Creque was not disabled under the Social Security regulations. (Tr. 55-65). At step one of the sequential evaluation analysis, the ALJ found that Creque had not engaged in substantial gainful activity since his alleged disability onset date of January 28, 2005. (Tr. 57). At step two, ALJ Porter ruled that Plaintiff suffered from the following severe impairments: varicose veins and intermittent superficial venous thrombus of the lower extremities, status post deep venous thrombosis of the right upper extremity, status post bilateral pulmonary embolism with placement of an inferior vena cava filter, chronic obstructive pulmonary disease, arthralgia in the knees, shoulders, elbows, and wrists, degenerative joint disease of the spine, mild hearing loss, and depression. (Tr. 57-59). However, at step three, the ALJ concluded that Plaintiff's severe impairments did not individually or in combination meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 59-61). Before moving to step four, the ALJ found that Creque retained the RFC:

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except he must have the opportunity to alternate sitting with standing and stretching for a minute or two every thirty minutes, can stand for fifteen minutes at a time, must elevate feet above the heart level periodically for brief periods of time and is limited to only occasional fine fingering work and grasping. He must avoid exposure to dust, fumes, gases, extreme dampness, and humidity. The claimant is limited to performing simple, routine, repetitive work not done in a fast-paced environment with few work places [sic] changes.

(Tr. 61). At step four, ALJ Porter determined that Plaintiff's RFC did not permit him to perform his past relevant work. (Tr. 64). Finally, at step five, the ALJ concluded that Creque was capable

6

of performing other work which existed in significant numbers in the national economy.  (Tr. 64-65).

Specifically, the ALJ found that Creque could work as a surveillance systems monitor.  (Tr. 65).

Plaintiff objects to the ALJ's decision based upon what he asserts are insufficiencies in the

ALJ's reliance upon the testimony of the VE.  Creque first contends that the ALJ relied upon the

VE's response to an improper hypothetical question posed to the VE.  Next, Plaintiff maintains that

it was error for the ALJ to rely upon the VE's testimony because the ALJ failed to question whether

the VE's testimony was consistent with the Dictionary of Occupational Titles ("DOT").  Lastly,

Plaintiff argues that remand is proper due to the VE's failure to identify a significant number of jobs

which Plaintiff could perform.

### A.  Plaintiff's Hearing Loss

Creque argues that remand is warranted due to the ALJ's failure to include Plaintiff's hearing

loss in his RFC finding incorporated into the hypothetical question the ALJ posed to the VE.

Plaintiff maintains that even though the final hypothetical question the ALJ posed to the VE

addressed Plaintiff's hearing loss, it did not eradicate the ALJ's duty to properly incorporate

Creque's hearing loss into the ALJ's RFC finding.  Specifically, Plaintiff submits that ALJ Porter's

RFC should have precluded Plaintiff from working at jobs "where hearing at certain volumes would

be required" and that the RFC should have included a restriction on Plaintiff's "exposure to noise

in the workplace".  (Pl.'s Br. at 13).

In support of this argument, Plaintiff points to treatment notes documenting Plaintiff's

problems with hearing.  For example, in April of 2007, Plaintiff presented to Dr. William Lippy, an

ear, nose, and throat specialist, complaining of intermittent drainage and ringing in his ears.  (Tr.

324-26).  Dr. Lippy examined both of Plaintiff's ears and discovered a large central perforation on

7

the right ear and measurable hearing loss in both ears.  *Id.*  He prescribed Creque with medication and a hearing aid for his left ear.  *Id.*  Subsequently, on June 18, 2007, Dr. Lippy performed surgery on Plaintiff's ear.[3]  (Tr. 498).

Although there is evidence in the record showing that Plaintiff experienced problems with hearing in the past, the Court rejects Plaintiff's argument that such problems warranted greater restrictions than those imposed by the ALJ.  While it is true that ALJ Porter found Plaintiff's hearing loss to constitute as a severe impairment at step two of the sequential evaluation process, such a determination was viewed under a *de minimis* standard.  *Childrey v. Chater*, 91 F.3d 143 (6th Cir. 1996) (Table).  Therefore, the ALJ's identification of Creque's hearing loss as a severe impairment did not necessarily mean that this malady placed a significant obstruction on Plaintiff's ability to work.  In fact, when discussing Plaintiff's hearing problem, ALJ Porter explicitly noted that he did not find this impairment to be severe.  (Tr. 58).  Instead, the ALJ noted that when Plaintiff was examined by Dr. John Belany in August of 2009, the doctor opined that Creque's right eardrum was retracted, but intact and had no sign of infection.  (Tr. 514).  Dr. Belany further commented that Creque's left eardrum was healthy, and that Plaintiff was able to converse with the doctor without any difficulty.  *Id.*  Similarly, other doctors also found that Plaintiff's alleged hearing problems did not impede his ability to work.  For example, on June 28, 2007, Plaintiff presented to Dr. Mary-Helene Massullo complaining of a "blood clotting disorder, a lot of back pain, shoulder pain, ah [sic] hard time breathing [and that he could] hardly hear."  (Tr. 291).  Despite Plaintiff's complaints of hearing problems, Dr. Massullo remarked that Creque's hearing did not appear to be compromised during her examination of him.  (Tr. 296).  It is quite telling that Dr. Massullo offered this opinion

_____

[3]It is not clear from the record on which ear the surgery was performed.  (Tr. 498).

just weeks after Creque underwent ear surgery by Dr. Lippy.  In addition, in September of 2007, State Agency Physician William Bolz, reviewed Plaintiff's file and completed an RFC assessment form.  (Tr. 362-69).  Although Dr. Bolz noted that Plaintiff claimed to be deaf in his right ear, the physician indicated that Plaintiff did not have any communicative limitations with hearing or speaking.  (Tr. 363, 366).

Plaintiff did not point to any evidence in the record demonstrating that he required the limitations he alleges.  Neither can the undersigned find any medical opinion evidence supporting Plaintiff's supposed need for additional restrictions.   While Plaintiff highlights the VE's acknowledgment that over half of the surveillance system monitor positions involve listening to sound devices, for the reasons set forth above, Creque has failed to show that his hearing impairment would prevent him from listening to these sound devices.  Furthermore, Plaintiff overlooks the fact that the remaining surveillance monitoring positions merely involved watching cameras.  The Court is further persuaded that the ALJ acted reasonably as an adjudicator is not required to incorporate a claimant's unsubstantiated complaints into his/her hypothetical question.  *Blancha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).    Nevertheless, although the ALJ doubted the severity of Plaintiff's hearing loss, he asked the VE to consider what impact any possible hearing loss in the right ear would have on Plaintiff's ability to  perform any of the three jobs identified by the VE.  The VE's response that such a limitation would  not eliminate any of the jobs he identified demonstrates that even if the ALJ had included a restriction on Plaintiff's ability to hear in his right ear, it would not have changed the VE's identification of positions which Creque could perform.

9

## B.  Conflict Between VE's Testimony and DOT

Next, Creque asserts that the ALJ failed to inquire on the record whether the VE's testimony was consistent with the information provided in the Dictionary of Occupational Titles as required in Social Security Ruling 00-4p.  Plaintiff maintains that there are two aspects of the ALJ's RFC finding which contradicted information listed in the DOT.  Creque argues that ALJ Porter's inclusion of a sit/stand option was inconsistent with the information listed in the DOT as the DOT is silent on this issue.[4]  Similarly, Plaintiff contends that the ALJ's requirement that Plaintiff be permitted to elevate his feet above heart-level was also inconsistent with the DOT because the DOT does not speak to this issue either.  Because the VE was able to identify jobs allowing for these limitations, Plaintiff asserts that the ALJ should have sought a reasonable explanation from the VE for the discrepancies between his testimony and the DOT.  Creque further argues that although the ALJ's written decision indicated that the VE's testimony was consistent with the DOT, this statement was unsupported by the record.

It is true that Social Security Ruling 00-4p, establishes that before an ALJ may rely on information provided by a VE, the ALJ must identify whether the VE's testimony conflicts with information listed in the DOT, and if so, the ALJ must seek a reasonable explanation for the conflict from the VE and explain the resolution of such conflict in his/her written decision.  SSR 00-4p.  In the case *sub judice*, ALJ Porter failed to question the VE regarding whether his testimony was

---

[4]Although the undersigned reads Plaintiff's brief as making this argument, the Court notes that at least a portion of Plaintiff's argument on this issue is off point.  Plaintiff argues that a sit/stand option is a non-exertional limitation, and thus precluded the ALJ from relying on the guidelines to determine whether there were jobs which Plaintiff could perform, and rather required the ALJ to employ the use of a vocational expert or the DOT.  (Pl.'s Br. at 14-15).  Seeing that the ALJ appropriately sought a vocational expert to testify at the hearing, it is not clear as to why Plaintiff asserted this argument.

consistent with the DOT.   However, the undersigned finds that the ALJ's failure was harmless as the information provided by the VE did not contradict the DOT, and Plaintiff's counsel failed to make such a claim during the hearing.

To begin, courts within this circuit have repeatedly found that while the DOT does not explicitly refer to sit/stand options, a vocational expert's opinion regarding such options are not contradictory to the DOT.   For example, in *Jones v. Social Security Administration*, the Middle District of Tennessee found:

> [I]t is plainly within the vocational expert's realm to offer an opinion, based on personal experience and review of other sources, as to the availability of jobs identified in the Dictionary of Occupational Titles ("DOT") and capable of allowing the option to sit or stand at will, even though the DOT does not itself recognize any particular job's amenability to a sit/stand option as such.   It has been held that no conflict between the testimony of the expert and the DOT is created by the mere imposition of a sit/stand option, such that would require resolution by the ALJ in order to pass muster.

No. 3:09-0951, 2011 WL 766974, at *8 (M.D. Tenn. Feb. 25, 2011) (internal citations omitted), *report and recommendation adopted sub nom. Jones v. Astrue*, No. 3:09-0951, 2011 WL 900032 (M.D. Tenn. Mar. 15, 2011). *See Bennett v. Astrue*, No. 5:07CV38-J, 2008 WL 345523, at *6 (W.D. Ky. Feb. 7, 2008) (noting that despite the ALJ's implication that a sit/stand option was inconsistent with the DOT, such an accommodation did not actually create a genuine conflict or inconsistency with the DOT, and that the ALJ's statement was merely an acknowledgment that the DOT was silent on the issue).   Additionally, the Eastern District of Michigan ruled that a VE's testimony identifying jobs amenable to a sit/stand option did not contradict the DOT, but rather supplemented the information listed in the DOT.   *Walton v. Comm'r of Soc. Sec.*, No. 08-13273, 2009 WL 2905952, at *9 (E.D. Mich. Sept. 8, 2009).

11

Just as courts have concluded that a sit/stand option does not conflict with the information stated in the DOT, the undersigned likewise finds that the VE's identification of jobs permitting an employee to elevate his feet periodically was not *inconsistent* with the DOT either.  Social Security Ruling 00-4p specifically addresses the need for adjudicators to address *conflicts* between the occupational evidence provided by the VE and the data listed int he DOT.  SSR 00-4p.  As Plaintiff noted, the DOT does not discuss a requirement regarding lifting one's legs.  Instead of viewing the VE's testimony regarding positions conformable with this limitation as conflicting with the DOT, the VE's role here was more akin to him supplementing the DOT, as the court suggested in *Walton* regarding the VE's treatment of a sit/stand option.  2009 WL 2905952, at *9.  Generally, cases finding an inconsistency between the VE's opinions and the DOT involve situations where the VE's testimony directly contradicts information listed in the DOT.  *See Austin v. Comm'r of Soc. Sec.*, No. 3:09-CV-723, 2010 WL 1170630, at *3 (N.D. Ohio Mar. 23, 2010) (finding a conflict between the VE's testimony and the DOT when the VE identified a job as being "unskilled" whereas the DOT labeled the position as "semiskilled"); *see also Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, n. 9 (6th Cir. 2010) (citing *Austin* as an example of a case where the VE's testimony conflicted with the description of a job listed in the DOT).  Conversely, the Sixth Circuit has found that the VE's testimony is not contradictory to the DOT even where the VE identifies classifications of jobs which do not specifically appear in the DOT.  *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601 (6th Cir. 2009) ("The fact that [the VE's] description of a production-inspector job does not align perfectly with the DOT's listed occupation titles should not be surprising given that 'the DOT contains information about most, *but not all*, occupations.'").  Additionally, the VE's statement in his written opinion, indicating that the VE's testimony was consistent with the DOT further persuades the

12

undersigned that the ALJ did not view the VE's testimony as contradicting the DOT.  Thus, the Court finds that the VE's testimony regarding occupations permitting an individual to periodically raise his legs is not contradictory to the DOT, but rather augments the data provided in the DOT.

Therefore finding that neither limitation considered by the VE contradicted the DOT, the Court concludes that the ALJ's failure to question the VE regarding such was harmless.  Although Social Security Ruling 00-4p imposes a duty upon the ALJ to inquire whether the VE's testimony is consistent with the DOT, where there is no actual conflict between a VE's testimony and the DOT, courts within this circuit have found that the ALJ's failure to make such an inquiry amounts to harmless error.  *Stull v. Astrue*, No. 3:10-CV-00693, 2011 WL 830633, at *7-9 (N.D. Ohio Jan. 18, 2011) (White, J.), *report and recommendation adopted* 2011 WL 830541 (Mar. 3, 2011); *Bratton v. Astrue*, No. 2:06-0075, 2010 WL 2901856, at *4 (M.D. Tenn. July 19, 2010); *Walton v. Comm'r of Soc. Sec.*, No. 08-13273, 2009 WL 2905952, at *9 (E.D. Mich. Sept. 8, 2009). Furthermore, the Court notes that during Plaintiff's cross examination of the VE, counsel did not question the VE regarding any inconsistencies between the VE's testimony and the DOT.  "If counsel believed that there was an actual conflict between the VE's testimony and the DOT, he should have explored the matter at the hearing rather than first complaining upon judicial review." *Bennett v. Astrue*, 2008 WL 345523, at *6.  As the Sixth Circuit has explained, the ALJ is not required to conduct its own investigation into the accuracy of the VE's testimony, "especially when the claimant fails to bring any conflict to the attention of the administrative law judge." *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008).[5]  Accordingly, the Court finds that the ALJ's failure

---

[5]Although *Ledford* involved a case where the VE mentioned that his testimony was consistent with the DOT, 311 F. App'x at 757, the undersigned is persuaded that the reasoning applied by the court in that case is still applicable to the facts presented in the instant case.

to strictly adhere to the mandates of Social Security Ruling 00-4p does not necessitate remand.

### C.  Substantial Number of Jobs

Creque's final assignment of error attacks the testimony of the vocational expert regarding the job incidence figures he provided to the ALJ.  Plaintiff first submits that the VE's testimony was insufficient because he failed to provide the DOT job reference number for the surveillance monitor position.  Yet, Creque has pointed to no case law supporting his contention that the VE's failure to provide a job reference number warrants remand.  Instead, there is case law to the contrary, indicating that there is no requirement that a VE provide reference numbers for the jobs he/she identifies. *Holland v. Comm'r of Soc. Sec.*, No. 1:09-CV-240, 2010 WL 3672338, at *18 (S.D. Ohio Mar. 1, 2010), *report and recommendation adopted* 2010 WL 3703293 (S.D. Ohio Sept. 16, 2010); *Rich v. Comm'r of Soc. Sec.*, No. 07-13490, 2008 WL 4450285, at *5 (E.D. Mich. Sept. 29, 2008) ("The regulations do not require identification of specific DOT numbers.").  Thus, Plaintiff's argument is without merit.

Next, Plaintiff maintains that the Commissioner did not carry its burden at step five of the sequential evaluation process because the VE failed to identify a significant number of jobs which Plaintiff could perform.  Specifically, Creque contends that because the VE only identified one occupation which Plaintiff could perform, the VE's testimony fell short of demonstrating that there was a significant number of jobs available to Creque.  While a claimant bears the burden of establishing his/her entitlement to disability benefits through the first four steps of the sequential evaluation process, at step five the burden shifts to the Commissioner to "identify a significant number of jobs" existing in the national economy conforming to the claimant's RFC. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  In *Hall v. Bowen*, the Sixth Circuit

acknowledged "the difficult task of enumerating exactly what constitutes a significant number" and further noted that it was not possible to set a bright line distinguishing between a significant number and an insignificant number of jobs.  837 F.2d 272, 275 (6th Cir. 1988) (internal quotations omitted).

Plaintiff again neglected to cite case law standing for the proposition that one occupation cannot represent a significant number of jobs.  Yet, as Defendant pointed out, the Sixth Circuit has explicitly held the opposite.  *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 579 (6th Cir. 2009). *Nejat* is particularly instructive in this case because of the factual similarities between that case and those now before the Court.  In *Nejat*, the VE originally identified three positions that the plaintiff could perform, but the plaintiff argued that his physical limitations precluded him from performing two of those jobs.  *Id.*  Therefore, the court was left to determine whether the single remaining job identified by the VE was sufficient to carry the Commissioner's burden of showing that there was a significant number of jobs available meeting the plaintiff's RFC.  *Id.*  The Sixth Circuit ruled that one occupation representing 2,000 jobs was sufficient to carry the Commissioner's burden at step five.  *Id.*  Similarly, in the instant case, the ALJ concluded that Creque's need to elevate his legs precluded him from working as document preparer or as a bench assembler.  However, the VE testified that there were 115,000 surveillance system monitor positions which Creque could perform. This number of surveillance system monitor positions is substantially higher than the 2,000 positions identified in *Nejat* which were found to represent a significant number of jobs in the national economy.  Therefore, the Commissioner satisfied its burden at step five by demonstrating that there was a significant number of surveillance system monitor jobs which accommodated Plaintiff RFC.

Finally, the Court rejects Plaintiff's contention that the VE was required to identify the number of surveillance system monitor jobs available in Creque's state of residence or local area

rather than in the nation.  The Social Security Act states that "'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. § 423(d)(2)(A).  The Sixth Circuit has also confirmed that the Commissioner "is not required to show that job opportunities exist within the [claimant's] local area."  *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999).  Nevertheless, it is well-established that "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s] are not considered work which exists in the national economy."  20 C.F.R. § 404.1566(b) (internal quotations omitted).  The Sixth Circuit set forth factors for an ALJ to use to determine whether a particular job is isolated, including: the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance the claimant is capable of traveling to engage in the assigned work; the isolated nature of the job; and the types and availability of such work.  *Hall*, 837 F.2d at 275.  However, the court clarified that these factors were merely suggestive, and that "[t]he decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation."  *Id*.

Plaintiff argues that it was critical for the VE to identify the number of jobs available in Plaintiff's state of residence or local area in order to determine whether he was capable of traveling to and from his place of employment.  Yet, "individual considerations extrinsic to the disability itself cannot enter into a finding of disability."  *Harmon v. Apfel*, 168 F.3d 289, 293 (6th Cir. 1999) ("The travel factor that plaintiff contends is relevant to her disability determination is therefore an extrinsic factor . . . and not simply a physical problem.").  As the Sixth Circuit aptly noted, "[a] person, otherwise able to work, is in effect offered a choice: he can choose either to commute the distance

16

to his job or he can move closer and avoid the expense and inconvenience.  Disability insurance is not available to fund his decision to live far from his job." *Id.* at 292 (citing *Lopez Diaz v. Sec'y of Health, Educ. & Welfare*, 585 F.2d 1137, 1140 (1st Cir. 1978)).  Although Creque denied having a driver's license, he admitted that this shortcoming was due to his inability to pay a reinstatement fee, and not as a result of any physical impairment.  Furthermore, Plaintiff has not come forward with any evidence suggesting that his ailments prevent him from traveling to and from employment.  Therefore, any potential hardship Plaintiff asserts that he has in commuting is extrinsic to his disability, and consequently, precluded from the disability determination analysis.  *See Harmon*, 168 F.3d at 293; *see also Nation v. Apfel*, No. 98-6759, 1999 WL 970302, at *7-8 (6th Cir. Oct. 15, 1999) (Table) ("[T]he fact that plaintiff lives 70 miles from the nearest metropolitan area is a factor *extrinsic* to her disability and is *not* be [sic] considered.").  After applying *Harmon* and *Nation* to the issue now before the Court, it is clear that the VE was not required to identify jobs located in Creque's state of residence or local area.  The VE's identification of jobs within the national economy was sufficient.  "Congress intended to provide a definition of disability which can be applied with uniformity and consistency throughout the Nation, without regard to where a particular individual may reside. . . ." *Nation*, 1999 WL 970302, at *8.

17

## VI.  <u>DECISION</u>

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner, that Plaintiff was not disabled, is supported by substantial evidence.  Accordingly, the Court recommends that the decision of the Commissioner be **AFFIRMED**.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date: <u>August 18, 2011</u>.


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).